UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES PAGE,

Plaintiff,

v.

CITY OF WYANDOTTE,

Defendant.
_____/

Case No. 15-cv-10575

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER GRANTING MOTION TO DISMISS [25]**

**I. INTRODUCTION**

Plaintiff, James Page, filed a complaint in Wayne County Circuit Court against Defendants, the City of Wyandotte and the Mayor and City Council of the City of Wyandotte (collectively "the City"), alleging that Defendants unlawfully collect franchise fees from consumers of the City's cable and water services in violation of state and federal law. Plaintiff brought the suit as a class action. Defendant removed the action to this Court on February 13, 2015. Dkt. No. 1.

Following the Plaintiff's motion to remand the action to state court, Dkt. No. 10, the Court entered an Opinion and Order Granting in Part and Denying in Part Plaintiff's Motion to Remand the case on May 13, 2015. Dkt. No. 14. The Court retained jurisdiction over the action's federal Constitutional claims. *Id.* at 8–9.

Presently before the Court is the City's Motion to Dismiss, filed July 30, 2015. Dkt. No. 25. Plaintiff filed a response on August 20, 2015, to which the City replied on September 3, 2015. Dkt. No. 27, 28. A hearing on the Motion was held on October 19, 2015.

-1-

The Court has reviewed and considered all the briefs submitted by both parties. For the reasons discussed herein, the Court will **GRANT** the City's Motion to Dismiss.

## II. FACTUAL BACKGROUND

Plaintiff is a resident of the City of Wyandotte, Michigan. Dkt. No. 1, p.12 at ¶ 2 (Pg. ID No. 12). The City provides municipal services to residents, including water, cable television, and electric services. *Id*. at ¶ 8 (Pg. ID No. 13). These utility systems are operated, maintained, and controlled by Wyandotte Municipal Services ("WMS"), a separate entity from the City created under the laws of the State of Michigan and Charter of the City. Dkt. No. 2, p. 5 (Pg. ID No. 119).

### A.     Cable Franchise Fee

From 1983 to 2005, the City allegedly charged cable customers an amount allegedly above the cost of providing services, referred to as a Cable Franchise Fee. Dkt. No. 1, p. 14, ¶¶ 17, 19 (Pg. ID No. 14). This fee, initially set at five percent of gross cable revenues, was raised to eight percent in 2005. *Id*. at p. 14, ¶¶ 17, 21 (Pg. ID No. 14). WMS collected this fee from customers through their cable rates and transferred it into the City's General Fund. *Id*. at p. 15, ¶ 18 (Pg. ID No. 14).

In 2007, the City Council authorized the Mayor to execute a franchise agreement with WMS, granting WMS the authority to provide video service within the City in exchange for a video service provider fee. *Id*. at p. 15, ¶¶ 24–29 (Pg. ID No. 15). The provider fee is equal to five percent of gross revenues, the same as the Cable Franchise Fee prior to its 2005 rate increase. *Id*. at p. 16, ¶ 30 (Pg. ID No. 16). In 2011, WMS began listing the Cable Franchise Fee separately on customer bills instead of embedding it within cable service rates. *Id*. at p. 17, ¶ 37

(Pg. ID No. 17). From 2008 to 2013, the Cable Franchise Fee contributed approximately $2.5 million into the City's General Fund. *Id*. at p. 19, ¶ 44 (Pg. ID No. 19).

### B.     Water Franchise Fee

WMS began charging water utility customers a Water Franchise Fee in 2008. *Id*. at p. 19, ¶ 51 (Pg. ID No. 19). The Water Franchise Fee was based on an annual dollar amount agreed upon by the City and WMS, currently set at $200,000.[1] *Id*. at p. 19, ¶¶ 49–50 (Pg. ID No. 19). Like the Cable Franchise Fee, WMS collected this fee from customers through their water rates and transferred it into the City's General Fund. *Id*. at p. 19–20, ¶¶ 49, 53 (Pg. ID No. 19–20). From 2008 to 2013, the Water Franchise Fee has contributed $1.2 million into the City's General Fund. *Id*. at p. 20, ¶ 54 (Pg. ID No. 20).

### C.     Plaintiff's Claims

Plaintiff originally set forth nine claims against the City in his class action; however, only four federal Constitutional claims remain. *See* Dkt. No. 14, pp. 8–9 (Pg. ID No. 423–24) ("This Court, therefore, has subject matter jurisdiction to hear the matter over the four stated Constitutional claims."). The remaining claims are: Count I, Unlawful Exaction And Taking Without Just Compensation; Count III, Denial Of Substantive Due Process; Count V, Denial Of Access To The Courts; and Count VI, Denial Of Procedural Due Process Under The Fifth And Fourteenth Amendments. Dkt. No. 1, pp. 24–28, 30–31, ¶¶ 91–100, 107–22, 132–47 (Pg. ID No. 24–28, 30–31). The City brought a Rule 12(c) Motion to Dismiss to dismiss the remaining claims on July 30, 2015. Dkt. No. 2, p. 2 (Pg. ID No. 479).

---

[1] In its Answer, the City states that this amount is "properly determined through accepted accounting or rate making procedures to reflect the cost of services provided." Dkt. No. 2, p. 21 (Pg. ID No. 135).

### III. LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is governed by the same standards applicable to a motion to dismiss filed pursuant to Rule 12(b)(6). *See Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007) (clarifying that "the legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same").

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The defendant bears the burden of showing that the plaintiff has failed to state a claim for relief. *Id*. Nonetheless, the court need not accept legal conclusions or unwarranted factual inferences as true. *Id*.

### IV. DISCUSSION

**A.   Count I: Unlawful Exaction And Taking Without Just Compensation**

Plaintiff's first claim alleges the City violated the 5th and 14th Amendments by taking private property for public use without compensation. Dkt. No. 1, pp. 24–25, ¶¶ 91–100 (Pg. ID

No. 24–25). Plaintiff asserts the property that was taken includes money, fair use of public utilities and rights-of-way, right to "fair, honest, and faithful services" from the government, right to control assets based on honest representations, right to "good government," and right to honest disclosures. *See id.* at 24, ¶ 96 (Pg. ID No. 24).

The City argues that "the United States Supreme Court has unequivocally held that taxes and user fees fall outside the scope of the Fifth Amendment takings analysis." Dkt. No. 25, p. 2, ¶ 2 (Pg. ID No. 479) (citing *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2600–01 (2013) (finding it beyond dispute that "taxes and user fees … are not 'takings.' ")). Plaintiff contends this "is flat out wrong and ignores the longstanding rule that the Fifth Amendment protects citizens from arbitrary and capricious exactions regardless of whether they are characterized as 'fees' or 'taxes.' "[2] Dkt. No. 27, p. 2 (Pg. ID No. 510) (citing *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 163–64 (1980) (finding a taking where a county claimed interest accruing in a private interpleader fund, in addition to a fee for the clerk's services)).[3]

"[A] reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services." *United States v. Sperry Corp.*, 493 U.S. 52, 63 (1989). This is because governmental bodies have an obvious interest in making the beneficiaries of services pay the cost. *Id.* The Michigan Supreme Court has provided three criteria for defining a user fee: (1) the user fee must serve a regulatory purpose rather than a revenue-raising purpose; (2) the user fee must be proportionate to the necessary costs of the service; and (3) the user fee must be

---

[2] *Brushaber v. Union Pacific Railroad Company*, the case that Plaintiff cited, does not appear to support his point. 240 U.S. 1 (1916). Plaintiff failed to provide a pin cite, so the Court is unclear about which part of *Brushaber* Plaintiff believes supports his case.

[3] Plaintiff fails to notice the distinction between the actual confiscation of interpleader funds wholly owned by private parties in *Beckwith*, and his voluntary payment of funds, which he later asserted he did not understand and regrets having paid. The latter was freely given to the City for services received, while the former remained private property while in the care of the court, pending resolution of a legal dispute.

voluntary. *Bolt v. City of Lansing*, 459 Mich. 152, 161–62, 587 N.W.2d 264, 269 (1998). Relying on the *Bolt* criteria, a Michigan Appeals Court determined that a cable franchise fee qualifies as a user fee because it "is a voluntary payment and consideration in exchange for a commodity." *Kowalski v. City of Livonia*, 267 Mich. App. 517, 520, 705 N.W.2d 161, 162 (2005); *see also Dobson v. City of Ann Arbor*, No. 257634, 2007 WL 162220, at *3 (Mich. Ct. App. Jan. 23, 2007) (finding that the cable franchise fee was a user fee to maintain a right-of-way to run cable lines through the city).

The City claims that the Cable Franchise Fee ensures that the City is paid for its services and reduces the subsidization of cable services. Dkt. No. 28, p. 3 (Pg. ID No. 656). WMS's cable utility operation uses public rights-of-way, just like a private cable provider. *See id*. Additionally, residents consume a service like WMS Cable voluntarily. *See id*. at 5 (Pg. ID No. 658). Certainly not all residents of the City choose to contract with WMS for their cable television and internet.[4] Residents who contract with private utility providers must pay a portion of their bill as a Cable Franchise Fee to the City. *See* Dkt. No. 1, p. 13, ¶¶ 11–12 (Pg. ID No. 13). If the City chooses not to subsidize residents who consume services from WMS at the expense of rights-of-way belonging to all Wyandotte residents—not just those who consume WMS utilities—that is the City's decision to make. *See* Dkt. No. 28, p. 3 (Pg. ID No. 656). Residents are free to voice their preferences at City Council meetings and elect representatives to the Council who better represent these preferences when voting on Franchise Fees. *See* Dkt. No. 25, pp. 13–14 (Pg. ID No. 500–01).

The Water Franchise Fee provides a more complicated issue, since it is unlikely that this service is as voluntary as WMS's cable utility. Additionally, since Plaintiff alleges that the City

---

[4] "The City of Wyandotte … has a total population of 25,883, residing in 10,991 households … the City's cable utility serves about 7,000 cable television subscribers; 5,800 high-speed Internet subscribers; and 1,200 digital telephone subscribers." Dkt. No. 14, pp. 2–3 (Pg. ID No. 417–18).

obtains a flat rate of $200,000 per year, not based in reliance on the amount of utilities used by customers, this fee may fall outside of the definition of a "user fee" exempt from the Headlee Amendment, Const. 1963, art 9, § 31. *See* Dkt. No. 1, p. 19, ¶ 49 (Pg. ID No. 19). Nonetheless, whether the Water Franchise Fee is a user fee or a tax is an issue more appropriately decided in state court. Even if the Water Franchise Fee was determined to be a tax, that would still not give rise to a takings claim under the *Koontz* precedent. Accordingly, the Court will dismiss Count I for failing to state a takings claim upon which relief may be granted.

### B.   Count III: Substantive Due Process

Plaintiff's third claim alleges the City violated the Due Process Clause under the 5th and 14th Amendments by depriving Plaintiff and others of property interests and rights, including: money, fair use of public utilities and rights-of-way, right to "fair, honest, and faithful services" from the government, right to control assets based on honest representations, right to "good government," and right to honest disclosures. Dkt. No. 1, pp. 26–28, ¶¶ 107–22 (Pg. ID No. 26–28).

Substantive due process protects a narrow class of interests. *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). Specifically, substantive due process protects (1) interests enumerated in the Constitution; (2) deeply rooted fundamental interests;[5] and (3) freedom from government actions that "shock the conscience."[6] *See id.* (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–

---

[5] "[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.' " *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal citations omitted). In determining whether a liberty interest qualifies as fundamental, the Court relies on our country's "history, legal traditions, and practices thus provide the crucial 'guideposts for responsible decisionmaking.' " *Id.* at 721.

[6] "[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.' " *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). The "shocks the conscious" standard describes an abuse of governmental power

50 (6th Cir. 2003)). Accordingly, in order to state a cognizable substantive Due Process Clause claim, Plaintiff must first identify an enumerated interest, a liberty interest recognized as fundamental,[7] or a government action that shocks the conscious.

The City first notes that Plaintiff has failed to mention any enumerated interests. Dkt. No. 25 at 18. Additionally, the City contends that none of the Plaintiff's stated interests have been recognized as "fundamental," and cites to *Bowers v. City of Flint* to support its argument for dismissing this claim. 325 F.3d 758, 764 (6th Cir. 2003) (determining that a state-created contractual right to a discount on one's water bill was not a proper subject for a substantive due process claim because such contractual rights were adequately redressed in a breach of contract action); Dkt. No. 25, p. 28 (Pg. ID No. 505). In his response, Plaintiff asserts that "[t]he City's actions shock the conscious" and "clearly violate the substantive provisions of the Due Process clause."[8] Dkt. No. 27, p. 25 (Pg. ID No. 533). Plaintiff appears to base these conclusory allegations on his argument that the fees were concealed from bill-payers. He offers no further legal argument or precedential cases in support of his argument.

The Court finds that Plaintiff has not pled sufficient factual matter necessary to conclude that the City has violated interests so "deeply rooted in this Nation's history and tradition" such that "neither liberty nor justice would exist if they were sacrificed." *See Glucksberg*, 521 U.S. at 720–21. " '[A]n interest in a fair water bill is not such a fundamental right that it triggers the due process clause's substantive protections,' particularly where the state has provided a procedural

---

"so 'brutal' and 'offensive' that it does not comport with traditional ideas of fair play and decency." *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957).

[7] Rights and liberties protected by substantive due process do not include "garden variety" common law contract disputes. *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) ("The substantive Due Process Clause is not concerned with the garden variety issues of common law contract.").

[8] Plaintiff also argues in his Response that "integrity in the administration of their government in all its Departments" is a deeply rooted interest; however, his pleadings fail to provide a sufficient factual basis for the Court to conclude that such a broad interest has been violated by the City. *See* Dkt. No. 27, p. 25 (Pg. ID No. 533).

remedy." *Bowers*, 325 F.3d at 766 (Moore, J., concurring) (quoting *Chun v. New York City Dep't of Envtl. Prot.*, 989 F. Supp. 494, 497 (S.D.N.Y.1998)). Furthermore, the Court does not believe that a concealed fee on a municipal utility bill is so egregious and outrageous that it shocks the conscious, as Plaintiff asserts. *Compare Rochin v. California*, 342 U.S. 165, 172 (1952) (forced stomach pumping to obtain evidence shocks the conscious), *with Lewis*, 523 U.S. at 855 (high-speed pursuit of motorcyclist by police, which resulted in death of motorcycle passenger, did not shock the conscious), *and Chavez v. Martinez*, 538 U.S. 760, 774-75 (2003) (coercive interrogation of a suspect after he had been shot by another police officer did not shock the conscious).

Consequently, because Plaintiff's substantive due process claim fails to identify an enumerated interest, a deeply rooted fundamental right, or a governmental action that shocks the conscious, the Court will dismiss Count III.

## C. Count V: Denial Of Access To The Courts

Plaintiff's fifth claim alleges the City violated the 5th and 14th Amendments by obstructing the access of citizens to the courts through a concealment of potential causes of action. Dkt. No. 1, pp. 30–31, ¶¶ 132–40 (Pg. ID No. 30–31). The City contends that Plaintiff failed to allege which cause of action had been foreclosed and that Plaintiff cannot claim denial of access to the courts while he has a valid case pending in state court. Dkt. No. 25, pp. 19–21 (Pg. ID No. 496–98). In response to the City's argument, Plaintiff has agreed to dismiss Count V, so long as the dismissal is without prejudice. Dkt. No. 27, p. 3 (Pg. ID No. 511). Accordingly, the Court will dismiss Count V.

## D. Count VI: Procedural Due Process

Plaintiff's sixth claim asserts that the City violated the Due Process Clause under the 5th and 14th Amendments by depriving him and others of liberty and property without notice and an opportunity to be heard. Dkt. No. 1, p. 31, ¶¶ 141–47 (Pg. ID No. 31).

There is a two-step inquiry to determine whether an individual has been denied procedural due process. First, the court determines "whether there exists a liberty interest or property interest which has been interfered with" by the defendants. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Second, "once it is determined that the Due Process Clause applies, 'the question remains what process is due.' " *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Procedural due process protects a limited range of interests. *Id.* at 570. Due process principles require that the government provide reasonable notice and opportunity to be heard prior to deprivation of a significant property interest. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15 (1950). Additionally, procedural due process principles apply to adjudicative governmental decisions, rather than legislative action. *See Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 216 (6th Cir. 2011) ("No notice or hearing is required before legislative action.").

i. **Nature of the City Council's Franchise Fee Determination**

The Supreme Court has previously stated that a city council's action "bore all the hallmarks of traditional legislation" when it was "a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *See Bogan v. Scott-Harris*, 523 U.S. 44, 55–56 (1998). "[L]egislation normally is

general in its scope rather than targeted on a specific individual, and its generality provides a safeguard that is a substitute for procedural protections." *Jefferson Cnty.*, 641 F.3d at 216 (quoting *Ind. Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004)) (brackets in original).

Here, the City Council's decision to raise the Cable Franchise Fee in 2005, *see* Dkt. No. 1, p. 14, ¶ 22 (Pg. ID No. 14), and authorize the Mayor to execute a Franchise Agreement to provide video service occupying municipal right-of-way, *see id*. at 15, ¶¶ 24–28 (Pg. ID No. 15), would appear to be legislative in nature. These actions taken by the City directly involve services being provided to its constituents, consumers of WMS utilities, rather than isolated individuals. Thus, it may be inappropriate for the Court to hear Plaintiff's procedural due process claims.

### ii. Property Interest and Procedural Safeguards Provided

Nonetheless, even if the Franchise Fee determinations do not qualify as legislative, the facts pled still do not give rise to a procedural due process claim. Count VI sheds little light on the exact liberty and property interests of which Plaintiff alleges the City erroneously deprived him.[9] Based on his prior allegations, the Court will assume that the property includes money, which is a recognized property interest. *See Herrada v. City of Detroit*, 275 F.3d 553, 556 (6th Cir. 2001).

Whether the City improperly interfered with or deprived Plaintiff of this interest is a more difficult question. Although Plaintiff did pay the fee voluntarily, he contends that the City mislead customers into thinking that the fee was standard and mandatory. Dkt. No. 27, p. 27 (Pg.

---

[9] "The City has unlawfully deprived Plaintiff and others similarly situated of liberty and property without providing them with the guaranteed right of notice and an opportunity to be heard." Dkt. No. 1, p. 31, ¶ 144 (Pg. ID No. 31).

-11-

ID No. 535). Plaintiff argues that misleading notice equates to no notice at all and thus interfered with his property interest since he paid the fees. *Id.*

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Based on the facts Plaintiff pled, it appears that he was given several instances of notice and opportunities to be heard. In 2005 and 2007, the City Council voted on issues related to the Franchise Fee at their meetings, *see* Dkt. No. 1, pp. 14–15, ¶¶ 21, 24, (Pg. ID No. 14–15), which Plaintiff could have attended and presented his objections. Plaintiff presents no arguments that these meetings were closed or that the records of minutes from these proceedings were sealed from public inspection.

Instead, Plaintiff asserts that the fact that he felt misled by the nature of the Franchise Fee equates to there having been no notice at all.[10] *See* Dkt. No. 27, p. 27 (Pg. ID No. 535). This argument fails in light of existing precedent in the Sixth Circuit. *See Herrada v. City of Detroit*, 275 F.3d 553, 557 (6th Cir. 2001) (finding a citation containing false and misleading information comported with requirements of procedural due process because it stated a hearing was available and provided phone numbers to call for more information). Here, Plaintiff's available hearings were the regularly conducted City Council meetings, which provided an open forum for him to raise his objections. Additionally, upon noticing the unfamiliar fee, he could have immediately inquired as to its purpose and origins. Instead, he chose to voluntarily pay the fee, after receiving

---

[10] Plaintiff raises the argument in his Response brief that Defendants has imputed constructive knowledge of sophisticated concepts of utility law onto its customers, which would require customers to hire legal counsel to investigate and explain the true nature of utility charges. *See* Dkt. No. 27, p. 27 (Pg. ID No. 535). However, a mere internet search of the terms "cable franchise fee" illustrates that the terms contained in Plaintiff's bill were not so sophisticated as to elude the understanding of a reasonable person without professional legal aid.

monthly bills that explicitly list the Franchise Fee as separate from his cable charge. *See* Dkt. No. 1, p. 18, ¶ 41 (Pg. ID No. 18).

Based on Plaintiff's allegations, the City's notices were reasonably calculated to inform WMS cable customers of the charges contained within their bills. Additionally, there were regularly held open meetings at which customers could voice their concerns. As such, assuming Plaintiff asserted a property interest protected by procedural due process, the City provided him with reasonable notice and an opportunity to be heard. Accordingly, the Court will dismiss Plaintiff's procedural due process claim.

### V. Conclusion

For the reasons stated herein, the Court will **GRANT** the City's Motion to Dismiss [25].

IT IS SO ORDERED.

Dated: October 20, 2015

s/Gershwin A. Drain
Hon. Gershwin A. Drain
United States District Court Judge
